Appeal dismissed on motion of counsel for Appellant. *Page 762 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 763 
 RULES OF THE SUPREME COURT RELATING TO ETHICS GOVERNING THE BENCH AND BAR OF FLORIDA and PROVIDING FOR CIRCUIT COURT COMMISSIONERS AND THEIR DUTIES AND POWERS, AND REGULATING REINSTATEMENT OF ATTORNEYS As approved by the COMMITTEE ON JUDICIAL ADMINISTRATION AND LEGAL REFORM on August 10, 1940 and THE EXECUTIVE COUNCIL of FLORIDA STATE BAR ASSOCIATION on September 17, 1940
Adopted by the Supreme Court of Florida January 27, 1941, to become effective April 1, 1941. *Page 764 
The rules and principles governing the conduct of judges and the members of the bar of this state shall be as prescribed by law and as follows:
 RULE A ETHICS GOVERNING JUDGES Ancient Precedents
"And I charged your judges at that time, saying Hear the causes between your brethren, and judge righteously between every man and his brother, and the stranger that is with him.
"Ye shall not respect persons in judgment; but ye shall hear the small as well as the great; ye shall not be afraid of the face of man; for the judgment is God's; and the cause that is too hard for you, bring it unto me, and I will hear it." — Deuteronomy, I. 16-17.
"Thou shall not wrest judgment; thou shall not respect persons, neither take a gift; for a gift doth blind the eyes of the wise, and pervert the words of the righteous." — Deuteronomy, XVI, 19.
"We will not make any justiciaries, constables, sheriffs or bailiffs, but from those who understand the law of the realm and are well disposed to observe it." — Magna Charta, XLV.
"Judges ought to remember that their office is jus dicere notjus dare; to interpret law, and not to make law, or give law. . . .
"Judges ought to be more learned than witty; more reverend than plausible; and more advised than confident. Above all things, integrity is their portion and proper virtue." . . .
"Patience and gravity of hearing is an essential part of justice; and an over speaking judge is no well-tuned cymbal. *Page 765 
It is no grace to a judge first to find that which he might have heard in due time from the Bar, or to show quickness of conceit in cutting off evidence or counsel too short; or to prevent information by questions though pertinent."
"The place of justice is a hallowed place; and therefore not only the Bench, but the foot pace and precincts and purprise thereof ought to be preserved without scandal and corruption." . . . — Bacon's Essay "Of Judicature."
 1. RELATIONS OF THE JUDICIARY. The assumption of the office of judge casts upon the incumbent duties in respect to his personal conduct which concern his relation to the state and its inhabitants, the litigants before him, the principles of law, the practitioners of law in his court, and the witnesses, jurors and attendants who aid him in the administration of its functions. 2. THE PUBLIC INTEREST.
Courts exist to promote justice, and thus to serve the public interest. Their administration should be diligent and careful. Every judge should at all times be alert in his rulings and in the conduct of the business of the court, so far as he can, to make it useful to litigants and to the community. He should avoid unconsciously falling into the attitude of mind that the litigants are made for the courts instead of the courts for the litigants.
 3. CONSTITUTIONAL OBLIGATIONS.
It is the duty of all judges in the United States to support the federal Constitution and that of the State whose laws they administer; in so doing, they should fearlessly observe and apply fundamental limitations and guarantees. *Page 766 
 4. AVOIDANCE OF IMPROPRIETY.
A judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of law; and his personal behavior, not only upon the Bench and in the performance of judicial duties, but also in his every day life, should be beyond reproach.
 5. ESSENTIAL CONDUCT.
A judge should be temperate, attentive, patient, impartial, and, since he is to administer the law and apply it to the facts, he should be studious of the principles of the law and diligent in endeavoring to ascertain the facts.
 6. INDUSTRY.
A judge should exhibit an industry and application commensurate with the duties imposed upon him.
 7. PROMPTNESS.
A judge should be prompt in the performance of his judicial duties, recognizing that the time of litigants, jurors and attorneys is of value and that habitual lack of punctuality on his part justifies dissatisfaction with the administration of the business of the court. 8. COURT ORGANIZATION.
A judge should organize the court with a view to the prompt and convenient dispatch of its business and he should not tolerate abuses and neglect by clerks, and other assistants who are sometimes prone to presume too much upon his good natured acquiescence by reason of friendly association with him.
It is desirable too, where the judicial system permits that *Page 767 
he should cooperate with other judges of the same court, and in other courts, as members of a single judicial system, to promote the more satisfactory administration of justice.
 9. CONSIDERATION FOR JURORS AND OTHERS.
A judge should be considerate of jurors, witnesses and others in attendance upon the court.
 10. COURTESY ANY CIVILITY.
A judge should be courteous to counsel, especially to those who are young and inexperienced, and also to all others appearing or concerned in the administration of justice in the court.
He should also require, and, so far as his power extends, enforce on the part of clerks, court officers and counsel civility and courtesy to the court and to jurors, witnesses, litigants and others having business in the court.
 11. UNPROFESSIONAL CONDUCT OF ATTORNEYS AND COUNSEL.
A judge should utilize his opportunities to criticise and correct unprofessional conduct of attorneys and counsellors, brought to his attention; and, if adverse comment is not a sufficient corrective, should send the matter at once to the proper investigating and disciplinary authorities.
 12. APPOINTEES OF THE JUDICIARY AND THEIR COMPENSATION.
Trustees, receivers, masters, referees, guardians and other persons appointed by a judge to aid in the administration of justice should have the strictest probity and impartiality and should be selected with a view solely to their *Page 768 
character and fitness. The power of making such appointments should not be exercised by him for personal or partisan advantage. He should not permit his appointments to be controlled by others than himself. He should also avoid nepotism and undue favoritism in his appointments.
While not hesitating to fix or approve just amounts, he should be most scrupulous in granting or approving compensation for the services or charges of such appointees to avoid excessive allowances, whether or not excepted to or complained of. He can not rid himself of this responsibility by the consent of counsel.
 13. KINSHIP OR INFLUENCE.
A judge should not act in a controversy where a near relative is a party; he should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position of influence of any party or other person.
 14. INDEPENDENCE.
A judge should not be swayed by partisan demands, public clamor or considerations of personal popularity or notoriety, nor be apprehensive of unjust criticism.
 15. INTERFERENCE IN CONDUCT OF TRIAL.
A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to *Page 769 
prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.
Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone.
He should avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment.
 16. EX PARTE APPLICATIONS.
A judge should discourage ex parte hearings of applications for injunctions and receiverships where the order may work detriment to absent parties; he should act upon such ex parte applications only where the necessity for quick action is clearly shown; if this be demonstrated, then he should endeavor to counteract the effect of the absence of opposing counsel by a scrupulous cross-examination and investigation as to the facts and the principles of law on which the application is based, granting relief only when fully satisfied that the law permits it and the emergency demands it. He should remember that an injunction is a limitation upon the freedom of action of defendants and should not be granted lightly or inadvisedly. One applying for such relief must sustain the burden of showing clearly its necessity and this burden is increased in the absence of the party whose freedom of action is sought to be restrained even though only temporarily. *Page 770 
 17. EX PARTE COMMUNICATIONS.
A judge should not permit private interviews, arguments or communications designed to influence his judicial action, where interests to be affected thereby are not represented before him, except in cases where provision is made by law for ex parte application.
While the conditions under which briefs of argument are to be received are largely matters of local rule of practice, he should not permit the contents of such brief presented to him to be concealed from opposing counsel. Ordinarily all communications of counsel to the judge intended or calculated to influence action should be made known to opposing counsel.
 18. CONTINUANCES.
Delay in the administration of justice is a common cause of complaint; counsel are frequently responsible for this delay. A judge, without being arbitrary or forcing cases unreasonably or unjustly to trial when unprepared, to the detriment of parties, may well endeavor to hold counsel to a proper appreciation of their duties to the public interest, to their own clients, and to the adverse party and his counsel, so as to enforce due diligence in the dispatch of business before the court.
 19. JUDICIAL OPINIONS.
In disposing of controverted cases, a judge should indicate the reasons for his action in an opinion showing that he has not disregarded or overlooked serious arguments of counsel. He thus shows his full understanding of the case, avoids the suspicion of arbitrary conclusion, promotes confidence in his intellectual integrity and may contribute useful precedent to the growth of the law.
It is desirable that Courts of Appeal in reversing cases *Page 771 
and granting new trials should so indicate their views on questions of law argued before them and necessarily arising in the controversy that upon the new trial counsel may be aided to avoid the repetition of erroneous positions of law and shall not be left in doubt by the failure of the court to decide such questions.
But the volume of reported decisions is such and is so rapidly increasing that in writing opinions which are to be published judges may well take this fact into consideration, and curtail them accordingly, without substantially departing from the principles stated above.
It is of high importance that judges constituting a court of last resort should use effort and self-restraint to promote solidarity of conclusion and the consequent influence of judicial decision. A judge should not yield to pride of opinion or value more highly his individual reputation than that of the court to which he should be loyal. Except in case of conscientious difference of opinion on fundamental principle, dissenting opinions should be discouraged in courts of last resort.
 20. INFLUENCE OF DECISIONS UPON THE DEVELOPMENT OF THE LAW.
A judge should be mindful that his duty is the application of general law to particular instances, that ours is a government of law and not of men, and that he violates his duty as a minister of justice under such a system if he seeks to do what he may personally consider substantial justice in a particular case and disregards the general law as he knows it to be binding on him. Such action may become a precedent unsettling accepted principles and may have detrimental consequences beyond the immediate controversy. He should administer his office with a due regard to the integrity *Page 772 
of the system of the law itself, remembering that he is not a depositary of arbitrary power, but a judge under the sanction of law.
 21. IDIOSYNCRASIES AND INCONSISTENCIES.
Justice should not be moulded by the individual idiosyncrasies of those who administer it. A judge should adopt the usual and expected method of doing justice, and not seek to be extreme or peculiar in his judgments, or spectacular or sensational in the conduct of the court. Though vested with discretion in the imposition of mild or severe sentences he should not compel persons brought before him to submit to some humiliating act or discipline of his own devising, without authority of law, because he thinks it will have a beneficial corrective influence.
In imposing sentence he should endeavor to conform to a reasonable standard of punishment and should not seek popularity or publicity either by exceptional severity or undue leniency.
 22. REVIEW.
In order that a litigant may secure the full benefit of the right of review accorded to him by law, a trial judge should scrupulously grant to the defeated party opportunity to present the questions arising upon the trial exactly as they arose, were presented, and decided, by full and fair bill of exceptions or otherwise; any failure in this regard on the part of the judge is peculiarly worthy of condemnation because the wrong done may be irremediable.
 23. LEGISLATION.
A judge has exceptional opportunity to observe the operation of statutes, especially those relating to practice, and to ascertain whether they tend to impede the unjust disposition *Page 773 
of controversies; and he may well contribute to the public interest by advising those having authority to remedy defects of procedure, of the result of his observation and experience.
 24. INCONSISTENT OBLIGATIONS.
A judge should not accept inconsistent duties, nor incur obligations, pecuniary or otherwise, which will in any way interfere or appear to interfere with his devotion to the expeditious and proper administration of his official functions.
 25. BUSINESS PROMOTIONS AND SOLICITATIONS FOR CHARITY.
A judge should avoid giving ground for any reasonable suspicion that he is utilizing the power or prestige of his office to persuade or coerce others to patronize or contribute, either to the success of private business ventures, or to charitable enterprises. He should, therefore, not enter into such private business, or pursue such a course of conduct, as would justify such suspicion, nor use the power of his office or the influence of his name to promote the business interests of others; he should not solicit for charities, nor should he enter into any business relation which, in the normal course of events reasonably to be expected, might bring his personal interest into conflict with the impartial performance of his official duties.
 26. PERSONAL INVESTMENTS AND RELATIONS.
A judge should abstain from making personal investments in enterprises which are apt to be involved in litigation in the court; and, after his accession to the Bench, he should not retain such investments previously made, longer than a period sufficient to enable him to dispose of them without serious loss. It is desirable that he should, so far as reasonably *Page 774 
possible, refrain from all relations which would normally tend to arouse the suspicion that such relations warp or bias his judgment, or prevent his impartial attitude of mind in the administration of his judicial duties.
He should not utilize information coming to him in a judicial capacity for purposes of speculation; and it detracts from the public confidence in his integrity and the soundness of his judicial judgment for him at any time to become a speculative investor upon the hazard of a margin.
 27. EXECUTORSHIPS AND TRUSTEESHIPS.
While a judge is not disqualified from holding executorships or trusteeships, he should not accept or continue to hold any fiduciary or other position if the holding of it would interfere or seem to interfere with the proper performance of his judicial duties, or if the business interests of those represented require investments in enterprises that are apt to come before him judicially, or to be involved in questions of law to be determined by him.
 28. PARTISAN POLITICS.
While entitled to entertain his personal views of political questions, and while not required to surrender his rights or opinions as a citizen, it is inevitable that suspicion of being warped by political bias will attach to a judge who becomes the active promoter of the interests of one political party as against another. He should avoid making political speeches, making or soliciting payment of assessments or contributions to party funds, the public endorsement of candidates for political office and participation in party conventions.
He should neither accept nor retain a place on any party committee nor act as party leader, nor engage generally in partisan activities. *Page 775 
 29. SELF-INTEREST
A judge should abstain from performing or taking part in any judicial act in which his personal interests are involved. If he has personal litigation in the court of which he is judge, he need not resign his judgeship on that account, but he should, of course, refrain from any judicial act in such a controversy.
 30. CANDIDACY FOR OFFICE.
A candidate for judicial position should not make or suffer others to make for him, promises of conduct in office which appeal to the cupidity or prejudices of the appointing or electing power; he should not announce in advance his conclusions of law on disputed issues to secure class support, and he should do nothing while a candidate to create the, impression that if chosen, he will administer his office with bias, partiality or improper discrimination.
While holding a judicial position he should not become an active candidate either at a party primary or at a general election for any office other than a judicial office. If a judge should decide to become a candidate for any office not judicial, he should resign in order that it cannot be said that he is using the power or prestige of his judicial position to promote his own candidacy or the success of his party.
If a judge becomes a candidate for any judicial office, he should refrain from all conduct which might tend to arouse reasonable suspicion that he is using the power or prestige of his judicial position to promote his candidacy or the success of his party.
He should not permit others to do anything in behalf of his candidacy which would reasonably lead to such suspicion. *Page 776 
 31. PRIVATE LAW PRACTICE.
In many state the practice of law by one holding judicial position is forbidden. In superior courts of general jurisdiction, it should never be permitted. In inferior courts in some states, it is permitted because the county or municipality is not able to pay adequate living compensation for a competent judge. In such cases one who practices law is in a position of great delicacy and must be scrupulously careful to avoid conduct in his practice whereby he utilizes or seems to utilize his judicial position to further his professional success.
He should not practise in the court in which he is a judge, even when presided over by another judge, or appear therein for himself or any controversy.
If forbidden to practise law, he should refrain from accepting any professional employment while in office.
He may properly act as arbitrator or lecture upon or instruct in law, or write upon the subject, and accept compensation therefor, if such course does not interfere with the due performance of his judicial duties, and is not forbidden by some positive provision of law.
 32. GIFTS AND FAVORS.
A judge should not accept any presents or favors from litigants, or from lawyers practising before him or from others whose interests are likely to be submitted to him for judgment.
 33. SOCIAL RELATIONS.
It is not necessary to the proper performance of judicial duty that a judge should live in retirement or seclusion; it is desirable that, so far as reasonable attention to the completion of his work will permit, he continue to mingle in social intercourse, and that he should not discontinue his *Page 777 
interest in or appearance at meetings of members of the Bar. He should, however, in pending or prospective litigation before him be particularly careful to avoid such action as may reasonably tend to awaken the suspicion that his social or business relations or friendships constitute an element in influencing his judicial conduct.
 34. A SUMMARY OF JUDICIAL OBLIGATION.
In every particular his conduct should be above reproach. He should be conscientious, studious, thorough, courteous, patient, punctual, just, impartial, fearless of public clamor, regardless of public praise, and indifferent to private political or partisan influences; he should administer justice according to law, and deal with his appointments as a public trust; he should not allow other affairs or his private interests to interfere with the prompt and proper performance of his judicial duties, nor should he administer the office for the purpose of advancing his personal ambitions or increasing has popularity.
 35. IMPROPER PUBLICIZING OF COURT PROCEEDING.
Proceedings in court should be conducted with fitting dignity and decorum. The taking of photographs in the court room, during sessions of the court or recesses between sessions, and the broadcasting of court proceedings are calculated to detract from the essential dignity of the proceedings, degrade the court and create misconceptions with respect thereto in the mind of the public and should not be permitted.
 36. CONDUCT OF COURT PROCEEDINGS.
Proceedings in court should be so conducted as to reflect the importance and seriousness of the inquiry to ascertain the truth. *Page 778 
The oath should be administered to witnesses in a manner calculated to impress them with the importance and solemnity of their promise to adhere to the truth. Each witness should be sworn separately and impressively at the bar or the court, and the clerk should be required to make a formal record of the administration of the oath, including the name of the witness.
 RULE B. ETHICS GOVERNING ATTORNEYS SECTION (1) 1. THE DUTY OF THE LAWYER TO THE COURTS.
It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected.
 2. THE SELECTION OF JUDGES.
It is the duty of the Bar to endeavor to prevent political considerations from outweighing judicial fitness in the selections of Judges. It should protest earnestly and actively against the appointment or election of those who are unsuitable for the Bench; and it should strive to have elevated thereto only those willing to forego other employments, whether of a business, political or other character, which *Page 779 
may embarrass their free and fair consideration of questions before them for decision. The aspiration of lawyers for judicial position should be governed by an impartial estimate of their ability to add honor to the office and not by a desire for the distinction the position may bring to themselves.
 3. ATTEMPTS TO EXERT PERSONAL INFLUENCE ON THE COURT.
Marked attention and unusual hospitality on the part of a lawyer to a Judge, uncalled for by the personal relations of the parties, subject both the Judge and the lawyer to misconstructions of motive and should be avoided. A lawyer should not communicate or argue privately with the Judge as to the merits of a pending cause, and he deserves rebuke and denunciation for any device or attempt to gain from a Judge special personal consideration or favor. A self-respecting independence in the discharge of professional duty, without denial or diminution of the courtesy and respect due the Judge's station, is the only proper foundation for cordial personal and official relations between Bench and Bar.
 4. WHEN COUNSEL FOR AN INDIGENT PRISONER.
A lawyer assigned as counsel for an indigent prisoner ought not to ask to be excused for any trivial reason, and should always exert his best efforts in his behalf.
 5. THE DEFENSE OR PROSECUTION OF THOSE ACCUSED OF CRIME.
It is the right of the lawyer to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused; otherwise innocent persons, victims only of suspicious circumstances, might be denied proper defense. Having undertaken such defense, the lawyer *Page 780 
is bound, by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law.
The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible.
 6. ADVERSE INFLUENCES AND CONFLICTING INTERESTS.
It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.
It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.
The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed.
 7. PROFESSIONAL COLLEAGUES AND CONFLICTS OF OPINION. A client's proffer of assistance of additional counsel should not be regarded as evidence of want of confidence, but the matter should be left to the determination of the client. A lawyer should decline association as colleague if *Page 781 
it is objectionable to the original counsel, but if the lawyer first retained is relieved, another may come into the case.
When lawyers jointly associated in a cause cannot agree as to any matter vital to the interest of the client, the conflict of opinion should be frankly stated to him for his final determination. His decision should be accepted unless the nature of the difference makes it impracticable for the lawyer whose judgment has been overruled to co-operate effectively. In this event it is his duty to ask the client to relieve him.
Efforts, direct or indirect, in any way to encroach upon the employment of another lawyer, are unworthy of those who should be brethren at the Bar, but, nevertheless, it is the right of any lawyer, without fear or favor, to gave proper advice to those seeking relief against unfaithful or neglectful counsel, generally after communication with the lawyer of whom the complaint is made.
 8. ADVISING UPON THE MERITS OF A CLIENT'S CAUSE.
A lawyer should endeavor to obtain full knowledge of his clients' cause before advising thereon, and he is bound to give a candid opinion of the merits and probable result of pending or contemplated litigation. The miscarriages to which justice is subject, by reason of surprises and disappointments in evidence and witnesses, and through mistakes of juries and errors of courts, even though only occasional, admonish lawyers to beware of bold and confident assurances to clients, especially where the employment may depend upon such assurance. Whenever the controversy will admit of fair adjustment, the client should be advised to avoid or to end the litigation. *Page 782 
 9. NEGOTIATIONS WITH OPPOSITE PARTY.
A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel. It is incumbent upon the lawyer most particularly to avoid everything that may tend to mislead a party not represented by counsel, and he should not undertake to advise him as to the law.
 10. ACQUIRING INTEREST IN LITIGATION.
The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting. 11. DEALING WITH TRUST PROPERTY.
The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.
Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him.
 12. FIXING THE AMOUNT OF THE FEES.
In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration. *Page 783 
In determining the amount of the fee, it is proper to consider (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms, with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are more guides in ascertaining the real value of the service.
In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.
In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.
 13. CONTINGENT FEES.
A contract for a contingent fee, where sanctioned by law, should be reasonable under all the circumstances of the case, including the risk and uncertainty of the compensation, but should always be subject to the supervision of a court, as to its reasonableness. *Page 784 
 14. SUING CLIENT FOR FEE.
Controversies with clients concerning compensation are to be avoided by the lawyer so far as shall be compatible with his self-respect and with his right to receive reasonable recompense for his services; and lawsuits with clients should be resorted to only to prevent injustice, imposition or fraud.
 15. HOW FAR A LAWYER MAY GO IN SUPPORTING A CLIENT'S CAUSE.
Nothing operates more certainly to create or to foster popular prejudice against lawyers as a class, and to deprive the profession of that full measure of public esteem and confidence which belongs to the proper discharge of its duties than does the false claim, often set up by the unscrupulous in defense of questionable transactions, that it is the duty of the lawyer to do whatever may enable him to succeed in winning his client's cause.
It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause.
The lawyer owes "entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability," to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does *Page 785 
not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client.
 16. RESTRAINING CLIENTS FROM IMPROPRIETIES.
A lawyer should use his best efforts to restrain and to prevent his clients from doing those things which the lawyer himself ought not to do, particularly with reference to their conduct towards courts, judicial officers, jurors, witnesses and suitors. If a client persists in such wrong-doing the lawyer should terminate their relation.
 17. ILL-FEELING AND PERSONALITIES BETWEEN ADVOCATES.
Clients, not lawyers, are the litigants. Whatever may be the ill-feeling existing between clients, it should not be allowed to influence counsel in their conduct and demeanor toward each other or toward suitors in the case. All personalities between counsel should be scrupulously avoided. In the trial of a cause it is indecent to allude to the personal history or the personal peculiarities and idiosyncrasies of counsel on the other side. Personal colloquies between counsel which cause delay and promote unseemly wrangling should also be carefully avoided.
 18. TREATMENT OF WITNESSES AND LITIGANTS.
A lawyer should always treat adverse witnesses and suitors with fairness and due consideration, and he should never minister to the malevolence or prejudices of a client in the trial or conduct of a cause. The client cannot be made the keeper of the lawyer's conscience in professional matters. He has no right to demand that his counsel shall abuse the opposite party or indulge in offensive personalities. Improper *Page 786 
speech is not excusable on the ground that it is what the client would say if speaking in his own behalf.
 19. APPEARANCE OF LAWYER AS WITNESS FOR HIS CLIENT.
When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.
 20. NEWSPAPER DISCUSSION OF PENDING LITIGATION.
Newspaper publications by a lawyer as to pending or anticipated litigation may interfere with a fair trial in the Courts and otherwise prejudice the due administration of justice. Generally they are to be condemned. If the extreme circumstances of a particular case justify a statement to the public, it is unprofessional to make it anonymously. An ex parte reference to the facts should not go beyond quotation from the records and papers on file in the court; but even in extreme cases it is better to avoid any ex parte statement.
 21. PUNCTUALITY AND EXPEDITION. It is the duty of the lawyer not only to his client, but also to the Courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes. 22. CANDOR, AND FAIRNESS.
The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness.
It is not candid or fair for the lawyer knowingly to misquote *Page 787 
the contents of a paper, the testimony of a witness, the language on the argument of opposing counsel, or the language of a decision or a textbook; or with knowledge of its invalidity, to cite as authority a decision that has been overruled, or a statute that has been repealed; or in argument to assert as a fact that which has not been proved, or in those jurisdictions where a side has the opening and closing arguments to mislead his opponent by concealing or withholding positions in his opening argument upon which his side then intends to rely.
It is unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses, in drawing affidavits and other documents, and in the presentation of causes.
A lawyer should not offer evidence which he knows the Court should reject, in order to get the same before the jury by argument for its admissibility, nor should he address to the Judge arguments upon any point not properly calling for determination by him. Neither should he introduce into an argument, addressed to the court, remarks or statements intended to influence the jury or bystanders.
These and all kindred practices are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice.
 23. ATTITUDE TOWARD JURY.
All attempts to curry favor with juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing. A lawyer must never converse privately with jurors about the case; and both before and during the *Page 788 
trial he should avoid communicating with them, even as to matters foreign to the cause.
 24. RIGHT OF LAWYER TO CONTROL THE INCIDENTS OF THE TRIAL.
As to incidental matters pending the trial, not affecting the merits of the cause, or working substantial prejudice to the rights of the client, such as forcing the opposite lawyer to trial when he is under affliction or bereavement; forcing the trial on a particular day to the injury of the opposite lawyer when no harm will result from a trial at a different time; agreeing to an extension of time for signing a bill of exceptions, cross interrogatories and the like, the lawyer must be allowed to judge. In such matters no client has a right to demand that his counsel shall be illiberal, or that he do anything therein repugnant to his own sense of honor and propriety.
 25. TAKING TECHNICAL ADVANTAGE OF OPPOSITE COUNSEL: AGREEMENTS WITH HIM.
A lawyer should not ignore known customs or practice of the Bar or of a particular Court, even when the law permits, without giving timely notice to the opposing counsel. As far as possible, important agreements, affecting the rights of clients should be reduced to writing; but it is dishonorable to avoid performance of an agreement fairly made because it is not reduced to writing, as required by rules of Court.
 26. PROFESSIONAL ADVOCACY OTHER THAN BEFORE COURTS.
A lawyer openly, and in his true character may render professional services before legislative or other bodies, regarding proposed legislation and in advocacy of claims before departments of government, upon the same principles *Page 789 
of ethics which justify his appearance before the Courts; but it is unprofessional for a lawyer so engaged to conceal his attorneyship, or to employ secret personal solicitations, or to use means other than those addressed to the reason and understanding, to influence action.
 27. ADVERTISING, DIRECT OR INDIRECT.
The customary use of simple professional cards is permissible. Publication in approved law lists and legal directories, in a manner consistent with the standard of conduct imposed by these Canons, of brief biographical data is permissible. This may include only a statement of the lawyer's name and the names of his professional associates, addresses, telephone numbers, cable addresses, special branches of the profession practiced, date and place of birth and admission to the Bar, schools attended with dates of graduation and degrees received, public offices and posts of honor held, bar and other association memberships and, with their consent, the names of clients regularly represented. This does not permit solicitation of professional employment by circulars, or advertisements, or by personal communications or interviews not warranted by personal relations. It is unprofessional to endeavor to procure professional employment through touters of any kind. Indirect advertisements for professional employment, such as furnishing or inspiring newspaper comments, or procuring his photograph to be published in connection with causes in which the lawyer has been or is engaged or concerning the manner of their conduct, the magnitude of the interest involved, the importance of the lawyer's position, and all other like self-laudation, offend the traditions and lower the tone of our profession and are reprehensible. *Page 790 
 28. STIRRING UP LITIGATION, DIRECTLY OR THROUGH AGENTS.
It is unprofessional for a lawyer to volunteer advice to bring a lawsuit, except in rare cases where ties of blood, relationship or trust make it his duty to do so. Stirring up strife and litigation is not only unprofessional, but it is indictable at common law. It is disreputable to hunt up defects in titles or other causes of action and inform thereof in order to be employed to bring suit or collect judgment, or to breed litigation by seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or to employ agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office, or to remunerate policemen, court or prison officials, physicians, hospital attaches or others who may succeed, under the guise of giving disinterested friendly advice, in influencing the criminal, the sick and the injured, the ignorant or others, to seek his professional services. A duty to the public and to the profession devolves upon every member of the Bar having knowledge of such practices upon the part of any practitioner immediately to inform thereof, to the end that the offender may be disbarred.
 29. UPHOLDING THE HONOR OF THE PROFESSION.
Lawyers should expose without fear or favor before the proper tribunals corrupt or dishonest conduct in the profession, and should accept without hesitation employment against a member of the Bar who has wronged his client. The counsel upon the trial of a cause in which perjury has been committed owe it to the profession and to the public to bring the matter to the knowledge of the prosecuting authorities. The lawyer should aid in guarding the Bar *Page 791 
against the admission to the profession of candidates unfit or unqualified because deficient in either moral character or education. He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice.
 30. JUSTIFIABLE AND UNJUSTIFIABLE LITIGATIONS.
The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong. But otherwise it is his right, and, having accepted retainer, it becomes his duty to insist upon the judgment of the Court as to the legal merits of his client's claim. His appearance in Court should be deemed equivalent to an assertion on his honor that in his opinion his client's case is one proper for judicial determination.
 31. RESPONSIBILITY FOR LITIGATION.
No lawyer is obliged to act either as adviser or advocate for every person who may wish to become his client. He has the right to decline employment. Every lawyer upon his own responsibility must decide what employment he will accept as counsel, what cases he will bring into Court for plaintiffs, what cases he will contest in Court for defendants. The responsibility for advising as to questionable transactions, for bringing questionable suits, for urging questionable defenses, is the lawyer's responsibility. He cannot escape it by urging as an excuse that he is only following his client's instructions.
 32. THE LAWYER'S DUTY IN ITS LAST ANALYSIS.
No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is entitled to *Page 792 
receive nor should any lawyer render any service or advice involving disloyalty to the law whose ministers we are, or disrespect of the judicial office, which we are bound to uphold, or corruption of any person or persons exercising a public office or private trust, or deception or betrayal of the public. When rendering any such improper service or advice, the lawyer invites and merits stern and just condemnation. Correspondingly, he advances the honor of his profession and the best interests of his client when he renders service or gives advice tending to impress upon the client and his undertaking exact compliance with the strictest principles of moral law. He must also observe and advise his client to observe the statute law, though until a statute shall have been construed and interpreted by competent adjudication, he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent. But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen.
 33. PARTNERSHIPS — NAMES. Partnerships among lawyers for the practice of their profession are very common and are not to be condemned. In the formation of partnerships and the use of partnership names care should be taken not to violate any law, custom, or rule of court locally applicable. Where partnerships are formed between lawyers who are not all admitted to practice in the courts of the state, care should be taken to avoid any misleading name or representation which would create a false impression as to the professional position or privileges of the member not locally admitted. In the formation of partnerships for the practice of law, no person should be admitted or held out as a practitioner or member who is not *Page 793 
a member of the local profession duly authorized to practice, and amenable to professional discipline. In the selection and use of a firm name, no false, misleading, assumed or trade name should be used. The continued use of the name of a deceased or former partner, when permissible by local custom, is not unethical, but care should be taken that no imposition or deception is practiced through this use. When a member of the firm, on becoming a judge, is precluded from practicing law, his name should not be continued in the firm name.
Partnerships between lawyers and members of other professions or non-professional persons should not be formed or permitted where any part of the partnership's employment consists of the practice of law.
 34. DIVISION OF FEES.
No division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility.
 35. INTERMEDIARIES.
The professional services of a lawyer should not be controlled or exploited by any lay agency, personal or corporate, which intervenes between client and lawyer. A lawyer's responsibilities and qualifications are individual. He should avoid all relations which direct the performance of his duties by or in the interest of such intermediary. A lawyer's relation to his client should be personal, and the responsibility should be direct to the client. Charitable societies rendering aid to the indigents are not deemed such intermediaries.
A lawyer may accept employment from any organization, such as an association, club or trade organization, to render legal services in any matter in which the organization, as an entity, is interested, but this employment should not include *Page 794 
the rendering of legal services to the members of such an organization in respect to their individual affairs. 36. RETIREMENT FROM JUDICIAL POSITION OR PUBLIC EMPLOYMENT.
A lawyer should not accept employment as an advocate in any matter upon the merits of which he has previously acted in a judicial capacity.
A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ.
 37. CONFIDENCES OF A CLIENT.
It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client.
If a lawyer is accused by his client, he is not precluded from disclosing the truth in respect to the accusation. The announced intention of a client to commit a crime is not included within the confidences which he is bound to respect. He may properly make such disclosures as may be necessary to prevent the act or protect those against whom it is threatened. *Page 795 
 38. COMPENSATION, COMMISSIONS AND REBATES.
A lawyer should accept no compensation, commissions, rebates or other advantages from others without the knowledge and consent of his client after full disclosure.
 39. WITNESSES.
A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party. In doing so, however, he should scrupulously avoid any suggestion calculated to induce the witness to suppress or deviate from the truth, or in any degree to effect his free and untrammeled conduct when appearing at the trial or on the witness stand.
 40. NEWSPAPERS.
A lawyer may with propriety write articles for publications in which he gives information upon the law; but he should not accept employment from such publications to advise inquirers in respect to their individual rights.
 41. DISCOVERY OR IMPOSITION AND DECEPTION.
When a lawyer discovers that some fraud or deception has been practiced, which has unjustly imposed upon the court or a party, he should endeavor to rectify it; at first by advising his client, and if his client refuses to forego the advantage thus unjustly gained, he should promptly inform the injured person or his counsel, so that they may take appropriate steps.
 42. EXPENSES.
A lawyer may not properly agree with a client that the lawyer shall pay or bear the expenses of litigation; he may *Page 796 
in good faith advance expenses as a matter of convenience, but subject to reimbursement.
 43. WITHDRAWAL FROM EMPLOYMENT AS ATTORNEY OR COUNSEL.
The right of an attorney or counsel to withdraw from employment, once assumed, arises only from good cause. Even the desire or consent of the client is not always sufficient. The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect. If the client insists upon an unjust or immoral course in the conduct of his case, or if he persists over the attorneys's remonstrance in presenting frivolous defenses, or if he deliberately disregards an agreement or obligation as to fees or expenses, the lawyer may be warranted in withdrawing on due notice to the client, allowing him time to employ another lawyer. So also when a lawyer discovers that his client has no case and the client is determined to continue it; or even if the lawyer finds himself incapable of conducting the case effectively. Sundry other instances may arise in which withdrawal is to be justified. Upon withdrawing from a case after a retainer has been paid, the attorney should refund such part of the retainer as has not been clearly earned.
 44. SPECIALISTS.
The canons of the American Bar Association apply to all branches of the legal profession; specialists in particular branches are not to be considered as exempt from the application of these principles.
 45. NOTICE OF SPECIALIZED LEGAL SERVICE.
Where a lawyer is engaged in rendering a specialized legal service directly and only to other lawyers, a brief, dignified *Page 797 
notice of that fact, couched in language indicating that it is addressed to lawyers, inserted in legal periodicals and like publications, when it will afford convenient and beneficial information to lawyers desiring to obtain such service, is not improper.
 46. AIDING THE UNAUTHORIZED PRACTICE OF LAW.
No lawyer shall permit his professional services, or his name, to be used in aid of, or to make possible, the unauthorized practice of law by any lay agency, personal or corporate.
 OATH OF ADMISSION.
The general principles which should ever control the lawyer in the practice of his profession are clearly set forth in the following Oath of Admission to the Bar, which they are sworn on admission to obey and for the wilful violation of which disbarment may be had.
I DO SOLEMNLY SWEAR:
I will support the Constitution of the United States and the Constitution of the State of Florida.
I will maintain the respect due to Courts of Justice and judicial officers;
I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, not any defense except such as I believe to be honestly debatable under the law of the land;
I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or jury by any artifice or false statement of fact or law;
I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in connection *Page 798 
with his business except from him or with his knowledge and approval;
I will abstain from all offensive personalities and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;
I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice. So HELP ME GOD. --------------------------
 ADDITIONAL ETHICS GOVERNING ATTORNEYS.
In addition to the foregoing ethics as promulgated, the members of the bar of this State shall be governed by the following ethics and principles:
 SECTION (II)
RULES GOVERNING THE CONDUCT OF ATTORNEYS IN FLORIDA.
It shall be the duty of all persons heretofore or hereafter admitted to practice law in the State of Florida:
1. To represent the interest of the client with undivided fidelity and to honestly and truly account to him for all funds received on his behalf, and on demand pay over to him all monies justly due him.
2. To maintain the respect due to the judicial officers and the Courts of Justice, State or Federal, within the State of Florida.
3. To employ, for the purpose of maintaining the causes confided to them, such means only as are consistent with truth, and never to seek to mislead the judges by any artifice, or by any statement of the law known to be false. *Page 799 
4. To maintain inviolate the confidence and, at every peril to themselves, to preserve the secrets of their clients.
5. To abstain from all offensive personalities, and to advance no fact prejudicial to the honor or reputation of a party or a witness, unless required by the justice of the cause with which they are charged.
6. Never to reject for any consideration personal to themselves the cause of the defenseless or oppressed.
7. Except as authorized by law, to refrain from seeking a reconsideration of the judgment of an appellate court by applying to any Justice or Judge, by letter or otherwise, to reinstate the cause on the rehearing docket after an application for a rehearing has been acted upon by the court, nor by such method to seek a rehearing after default in applying therefor. Counsel should present their argument in open court, or by brief, after serving a copy on the other side, and should therefore refrain from discussing the merits of the cause with a justice or judge, by letter or otherwise, either pending the original consideration or upon rehearing.
8. To refrain, except in open court or in the presence of opposing counsel, from arguing or discussing in person, by letter, or other communication, the merits of any case with any judge or court before whom such case is pending, unless a copy of such argument, discussion or communication be furnished to opposing counsel. In order that a proper respect for and consideration of the integrity and character of all courts may be had and promoted, the conduct forbidden by this rule is deemed unethical and improper.
No person heretofore or hereafter admitted to practice law in Florida, shall
9. Appear for or hold himself or herself out as appearing for or as having the right to receive for or transact any legal business for or in the name of, another without being *Page 800 
authorized so to do, or when he shall have been suspended, disbarred or excluded from the practice of law, or his authority to practice law shall have ceased;
10. Permit the use of his name as an attorney by any other person who is not then licensed to practice law or by any corporation or by any firm other than a firm of duly licensed attorneys;
11. Suppress or stifle any evidence or testimony;
12. Use the name of or be associated in the practice of law with any person who is disbarred, or who, at the time of such use or association, is suspended from the practice of law;
13. Knowingly, without just cause, advise any client or person to disobey any valid order of a court of this State or of any other state or of the United States;
14. Wilfully, without just cause, disobey or violate the legal order of any court, State or Federal, requiring him to do or forbear from doing any act growing out of or relating to or in any wise connected with his professional duties or to the conduct of his profession;
15. Introduce or offer to introduce any testimony which he knows to be false or forged;
16. Fail to offer to exclude, or omit to disavow, disclaim, and seek the elimination, from the case of any false or forged evidence or testimony, promptly upon learning that it is false or forged;
17. Represent a party to a cause or his successor after having previously represented the opposite party or interest in connection therewith;
18. Fraudulently procure, or aid in the fraudulent procurement of, admission to practice law, either by wilfully misrepresenting the facts as to his or another's qualifications for admission or by fraudulently suppressing information at *Page 801 
the time of or prior to such admission, and having relation to his or another's character, fitness, or qualification to practice;
19. Solicit his employment or professional engagement or the employment of professional engagement of another whose partner he is, or from whose employment there is any expectation of profit or benefit, directly or indirectly, to himself;
20. Employ any person to seek for, secure, obtain, or procure a client or professional business for himself, or for another whose partner he is, or for another from whose employment there is any expectation of profit or benefit, directly or indirectly, to himself;
21. Promise to give or offer to promise to give, any valuable consideration to any person as an inducement to placing in his hands or in the hands of any partnership of which he is a member, or in the hands of any person from whose employment there is any expectation of profit or benefit, directly or indirectly, to himself, of a claim or demand or an item of business of any kind;
22. Promise to give, or offer to promise or give, a valuable consideration to any person in consideration of having placed in his hands, or in the hands of any person from whose employment there is any expectation of profit or benefit, directly or indirectly, to himself, of a claim or demand or item of business of any kind;
But nothing contained in this rule shall be construed as prohibiting the division of fees with a forwarder of business whether such forwarder be an attorney or a reputable collection agency;
23. Improperly falsify, alter, or abstract any pleading or other court record or any public record or public document; *Page 802 
24. Knowingly or wilfully make any false representations of fact to any judge, court, or jury to induce a favorable action or ruling by either;
25. While a partner of or associated in the practice with any prosecuting attorney defend any criminal case of any kind, character or description in the court in which such partner or associate is the prosecuting officer;
26. Accept employment in any action or any action for wrongful death or participate in the fees accruing from such a case brought to him by or sent to him through the influence of any person in his employ whose duty in whole or in part is to conduct or make investigation of any kind;
27. Be guilty of any deceit or wilful misconduct in his profession;
28. Do any act which by the law of Florida, constitutes a felony involving moral turpitude;
29. Be associated, as a partner or otherwise, in the practice of law with another person who is not then licensed in Florida to practice law, or who is then suspended or disbarred from the practice of the law, provided that this rule shall not apply to association with an attorney of a State other than Florida who is authorized to and is practicing in such State;
30. No person licensed to practice law in the courts of the State of Florida shall be guilty of any conduct in the practice of his profession unbecoming an attorney at law;
31. Appear on behalf of a client before a public officer, board, committee or body, without disclosing, upon being requested by such public officer, board, committee or body, or any member thereof, that he is an attorney representing such client;
32. Any attorney who shall do or be guilty of any of the acts forbidden or prohibited by law or rules of court *Page 803 
may be subject to disciplinary action by public or private reprimand, or by suspension from the practice of law, or by exclusion and disbarment therefrom.
33. An attorney may be disbarred and excluded from the practice of law when any judgment is rendered against him for money collected by him as attorney upon which judgment an execution has issued and been returned no property.
 CIRCUIT COURT COMMISSIONS RULE C
1. Commission Established. There is hereby established in each judicial circuit of the State a Circuit Court Commission (hereinafter referred to as the Commission) to be composed of not less than three nor more than seven practicing attorneys to be appointed by the judge or judges of the Circuit Court of the respective circuits, and the recommendation of the local bar association or associations shall be considered in the making of said appointments. The number composing said commissions within the limits herein stated shall be within the discretion of the circuit judge or judges. Such appointments shall be for terms of three years unless otherwise provided in the order of appointment.
2. Powers of Commission. (a) Said commissions shall have power to organize by electing a president and secretary and to prescribe rules of procedure. They shall have and they are hereby clothed with power to investigate all complaints of unprofessional conduct on the part of any member of the bar within their circuits, including persons charged with unauthorized practice of the law, and make report of such of their findings as it shall deem expedient to the circuit judge in the manner herein provided.
(b) Said commissions may initiate such investigations at such times and places as deemed by them advisable; they *Page 804 
shall have the power to summon and examine witnesses, to order the production of books, records, or other documentary evidence and to administer oaths. Any refusal to comply with any proper order or directions of any such commission shall be reported to the circuit judge or judges for summary action thereon.
3. Charges Against Attorney.
(a) If, after investigation, a majority of the Commission shall find that any member of the bar has been guilty of unprofessional conduct in violation of law or any ethics prescribed by the Supreme Court of Florida, it may make a report thereof to the Circuit Court by presenting same to a judge thereof, together with its recommendations.
(b) After Notice. No report against any attorney for unprofessional conduct shall be made until such attorney shall have had an opportunity to appear before the Commission after a reasonable notice to present in person or by counsel any evidence or argument in his behalf. If such attorney be beyond the limits of the state, such attorney may be served as the circuit judge directs. If he disregards the notice of hearing the matter may proceed ex parte.
4. Citation.
(a) Upon receipt of the report of a Commission signed by the president and secretary of the Commission wherein a charge is made against any member of the bar of such circuit, the court may immediately issue a rule or citation to such attorney commanding him to answer the charges against him on a day certain or else show cause why disciplinary action should not be taken against him.
(b) A form of citation shall be presented to the judge of the circuit court with the report by a member of the Commission. If the judge to whom any such report is presented be of the opinion that no citation should issue he *Page 805 
shall thereupon so advise the Commission together with his reasons therefor in writing.
5. When the report of the Commission is presented there shall also be submitted to the judge a copy of the evidence certified by the secretary as the evidence upon which the report is based, which shall not be filed; but the accused attorney shall upon request be granted leave to examine same.
6. Prosecution of Disbarment. Upon an answer or any issue of fact or law the prosecution of the cause shall be by the state Attorney or such attorney as the judge may designate to assist him or by some member of the bar assigned to prosecute the proceedings. If no answer or other pleading be filed the matter may proceed ex parte. Depositions may be taken as in any other cause.
7. Final Judgment. Upon final hearing of said cause the court shall make an order or enter such judgment as the charges, proof and the law warrant, whether such be fine, suspension, disbarment or other discipline, and if the rights of third parties are involved, make such order as may be just and equitable concerning them and the said attorney.
8. Reinstatement. (a) No person who has been disbarred or has resigned from the bar of Florida shall be reinstated unless he shall first file his petition for reinstatement with the Clerk of the Circuit Court of such county wherein he last practiced and maintained an office; and shall publish such notice as shall be fixed by the order of the circuit judge longest in service and able to act, requiring any one opposed to such reinstatement to appear and show cause why reinstatement should not be granted at a time fixed in the notice and order, and a copy of such order shall be served on the President of the Commission forthwith by the party seeking reinstatement.
(b) Petitions for reinstatement shall be considered by *Page 806 
the judges of the circuit sitting en banc and a majority shall constitute a quorum.
(c) By Supreme Court. Upon a hearing of any petition for reinstatement of any disbarred or resigned attorney, the petition, and any orders, notice and all written pleadings and motions shall be forwarded together with the findings or recommendations of the said circuit judge or circuit judges to the Clerk of the Supreme Court, and when ordered by the trial judge or judges a certified transcript of the proceedings of said hearing, whereupon same shall be progressed by the clerk as a cause for the consideration of said Supreme Court.
9. The files of the Commission shall be kept private and periodically destroyed under order of a circuit judge.
10. The foregoing shall be in lieu of all other orders or not limited to Special Rule of the Supreme Court of Florida, entitled "Special Procedure for Inquiries into charges of official misconduct on the part of attorneys," adopted and promulgated to be effective October 1, 1936, and also Special Rule adopted October 13, 1938, providing for additional and supplementary procedure for disciplining or disbarring attorneys at law for unprofessional conduct, and (b) adopting ethics for the Bench and Bar of the State, including but not limited to that certain order entered November 4, 1936, by the Supreme Court of Florida.
On and after March 1, 1941, Rule Eleven of this Court shall read as follows:
Appeals (including writs of error) in civil or criminal cases shall be taken in the following manner. The appellant or plaintiff in error shall file with the clerk of the circuit court: (1) a notice of appeal, (2) a concise statement of the questions proposed for adjudication without duplication or repetition, and (3) a statement of such of the record *Page 807 
(pleadings, evidence, bill of exceptions, master's report, and other proceedings) in the trial court as are essential to adjudicate the questions proposed. A copy of said notice and statement shall be served on the adverse party or his attorney or record when filed. Within ten days thereafter the appellee may file amendments to the questions proposed for adjudication, as well as other accounts in the nature of a cross appeal. Appellee may also serve a statement of the other portions of the record to be included on appeal. These papers together with the transcript of evidence and certificate of the clerk shall constitute the record on appeal.
In lieu of requirement three, the parties to the appeal may file with the clerk of the circuit court a stipulation in which may be designated such portions of the record in the trial court as are essential to the adjudication of questions proposed.
The questions proposed shall be the guide for making the record and all portions of the proceedings in the trial court not essential to adjudicate such questions shall be omitted. Not more than one copy of any exhibit or document shall be included and all formal and irrelevant parts thereof shall be omitted. Any infraction of this requirement will be ground for motion to dismiss which may be done sua sponte or granted with such penalty or limitation as the Court may deem proper to impose, including taxation against the offending party of the full cost of the improper inclusion of such matter. When the appeal is one in which there is no controversy about the facts or if for other reasons the questions presented can be adjudicated without an examination of any or all the evidence or other matter before the trial court, the parties to the appeal or their counsel, may prepare and sign a stipulation which shall contain the essential pleadings in the cause or a summary thereof, a copy of the Judgment *Page 808 
or decree appealed from, a copy of the notice of appeal, the questions brought to this Court for adjudication, a statement of what the evidence proves or of so many of the facts averred and proven or not proven as are essential to adjudicate the question proposed. The stipulation so prepared shall be submitted to the trial court to be examined and approved with or without such qualification or addition as he may deem essential to make it speak the truth. When so approved, it shall be filed with the clerk of the circuit court in duplicate who shall certify one copy to this Court under his seal as the record on appeal. If the case is one in which the ends of justice require this Court may make such order as is proper to require submission of the issues and record to it.
If any portion of the record be stenographically reported, the appellant shall secure one copy of the transcribed notes thereof from the court reporter and file it with the clerk of the circuit court. He shall at the same time secure a copy of any other portion of the record to which he shall attach a true copy of the transcribed notes of the court reporter and serve it on the adverse party. Testimony so included may be in question and answer form. Appellee may file additional portions of the reporter's transcribed notes if deemed essential but under same rule as those filed by appellant. All copies of transcribed notes shall be prepared in the same manner that the record is required to be prepared in the following paragraph.
The clerk of the circuit court shall prepare and transmit the record to this Court duty certified. If prepared by stipulation as authorized herein, he shall transmit a duly certified copy of the stipulation as required. If prepared from directions filed with him, he shall attach to the certified copy of the transcribed notes of the court reporter filed with him copy of such portions of the record and other proceedings *Page 809 
as are required to be included. He shall then certify the completed record to this Court but shall not verify or make any charge for that portion embraced in the transcribed notes of the court reporter.
The record may be printed or typewritten, but in either event the lettering shall be black and distinct, in type no smaller than small pica, on white unglazed paper, six by nine inches if printed, legal cap size if typewritten, with one-inch margins, and double spaced except when quoted matter is included, which may be single spaced. Paper not less than twenty pound No. 1 sulphite shall be used where the record or brief is typewritten.
No photostatic copy of any record or paper shall be used unless it is certified by the trial judge that a facsimile reproduction is essential to the consideration of the case because of some peculiarity on the original paper which would not be discernible in a typewritten or printed copy, and when photostatic copies are used the requirements as to size shall be adhered to.
All records shall be bound in pamphlet, saddle stitched if printed, securely fastened at the top if typewritten, with headings in capital letters, subheadings in bold type not less than eleven point, with index, and in case the volume exceeds one hundred and fifty sheets, it shall be bound in two or more folios, with not more than one hundred and fifty sheets to each folio. The cover on each volume shall contain the number and style of the cause, title of this Court, title of the court from which the cause was appealed, and the names and addresses of counsel.
Every record shall contain an index giving the references to those parts of it which are necessary to the determination of the questions presented.
It is not required that the record be approved by the trial *Page 810 
court but if challenged on the ground that it does not speak the truth, the difference shall be submitted to the trial court and made to conform with what actually took place at the trial. If any question or other thing material to either party is omitted from the record by accident or error or is misstated therein, it may be corrected by stipulation or by the trial court on suggestion or on its own motion either before or after it is transmitted. If necessary, a new record may be certified and transmitted by the clerk of the trial court. Approved and adopted January 13, 1941.
 RULES FOR THE INTERNAL GOVERNMENT OF THE SUPREME COURT OF FLORIDA
Rule 1. The Supreme Court shall be divided into two Divisions, designated as Divisions A and B respectively, each Division to be composed of three Justices and the Chief Justice who shall be a member of each Division and shall participate in the action of each Division, as well as of the whole Court when the Court acts as a single body. The opinion, order or judgment of a Division, concurred in by the Chief Justice, shall be the opinion, order or judgment of the Court, and filed as such, except in those cases where the Court acts in a single body, as hereinafter provided.
Rule 2. The Court shall hear, consider and determine cases as a single body where such cases involve (1) capital punishment, or (2) the determination of a State or Federal constitutional question wherein shall be brought into controversy the constitutionality of a Federal or State statute, rule, regulation or municipal ordinance, or (3) where there is a dissent to the proposed judgment of a Division by a member thereof or the Chief Justice, or (4) where a case is ordered by the Chief Justice to be considered by the Court en banc. *Page 811 
Rule 3. When exercising its powers and jurisdiction as a single body, a majority of the members of the Court shall constitute a quorum for the dispatch of business.
Rule 4. The Chief Justice shall be the administrative head and presiding officer of the Court and of each Division thereof.
Rule 5. In the event the Chief Justice shall be unable to act for any cause, the Justice having seniority in point of continuous service, and able to act, shall act instead, and with like effect.
Rule 6. In any case where there shall be a member of a Division absent or disqualified to hear and determine any case, the Chief Justice may assign a member of the other Division, or call in a Circuit Judge to act in his stead or the Chief Justice may assign such case to be taken up and considered by the Division in which there shall be no disqualified member.
Rule 7. Each Division of the Court may, by a decision concurred in by its three members and the Chief Justice affirm a judgment, decree, or order without a written opinion and without referring the cause to the other Division.
Rule 8. Each Division of the Court may grant or deny applications for writs of mandamus, prohibition, quo warranto, certiorari or habeas corpus; and when granted, such writs shall be made returnable according to law.
Rule 9. Each Division of the Court by unanimous decision may determine and grant or deny motions to dismiss appeals or writs of error and may determine and grant or deny motions to amend or to strike portions of a record, or may grant, modify or vacate constitutional writs and supersedeas orders as authorized by law and the rules of this Court, without written opinions and without referring the matter to the other Division. *Page 812 
Rule 10. Cases may be set down for oral argument by the Chief Justice, whether they are to be heard before the Court sitting as a single body or in divisions.
Rule 11. Applications for rehearing in cases determined by a Division shall be referred for disposition to the Division that decided the cause, unless otherwise ordered by the Court, or by the Chief Justice. Applications for rehearing in cases decided by the Court sitting as a single body shall be considered by the Court as a single body and disposed of by the Court enbanc.
ORDERED: That the foregoing Rules be and they are hereby adopted this 21st day of January, 1941, and shall become operative at once.
On and after March 1, 1941, Rule 35 of this Court shall read as follows:
Every appeal or writ of error taken to this Court shall operate as a supersedeas under the following conditions: The party taking the appeal or writ of error shall at the same time or prior to the return day of the transcript apply to the Court from which the appeal or writ of error is taken for a supersedeas bond, the amount and conditions of which shall be fixed by the Court. The bond shall be payable to the adverse party conditioned to satisfy the judgment or decree in full, including costs, interest if chargeable, and damages for delay, if the cause be dismissed or the judgment affirmed, and to satisfy in full any modification of the judgment or decree including such costs, damages, and interest as the appellate court may award. When the judgment is for the recovery of money not otherwise secured the bond shall be fixed at a sum to cover the amount of the judgment, costs on appeal, interest if legally chargeable, and damages for delay unless the Court after notice and hearing for good cause shown fixes a different amount or orders security other than the bond. *Page 813 
If the judgment is in whole or in part other than a money judgment, the amount and condition of the bond shall be determined by the Court, costs of the action, costs of the appeal, interest if chargeable, damages for delay, use, and detention being the elements to be considered in fixing the amount of such bonds. When the bonds so required has been posted, the clerk or the judge shall endorse on the appeal or writ of error that it shall be a supersedeas suspending further proceedings in the Court below. In any event, if the bond required be deemed to be arbitrary or unreasonable or such as is for any other reason not proper or contemplated by law, it may on motion be reviewed, modified, or discharged by this Court on any Motion Day provided five days notice thereof be given the adverse party. Any bond required herein may be approved by the judge or the clerk of the court. This rule was adopted and promulgated pursuant to authority of Chapter 13870, Acts of 1929, and in effect repeals Sections 4621 and 4962, Compiled General Laws of 1927.
Approved January 13, 1941.
 *Page 1